The next case is also Dental Monitoring v. Align Technology, 2025-1752. Mr. Sandinato. Thank you, Your Honor. May it please the Court. We have a few issues on appeal, but with the Court's permission, I'd like to start with the prior art status issue with respect to the carrier reference. This is the issue that implicates or involves this Court's decision dynamic drinkware. And in this case, the carrier reference can only be prior art if it were to enjoy the benefit of the filing date of its provisional application. And that now is controlled by Section 102d. And Section 102d says that that can only happen if the application is entitled to claim a right of priority from the provisional application. That language, entitled to claim a right of priority, is a direct quote from 102d, and it's critical here. And one of the reasons that language is so critical here is because that language, entitled to claim, is the exact same language that this Court used in dynamic drinkware in the very context of assessing whether a patent, a prior art patent, should be accorded status as of its provisional application. In that case, in a pre-AIA context, in the Section 102e context. And dynamic drinkware held, a reference patent is only entitled to claim the benefit of the filing date of its provisional application if the disclosure of the provisional application provides support for the reference patent. Dynamic drinkware is based on the fundamental notion that a patent cannot claim the benefit of a provisional filing in terms of prior art status unless the application, unless the provisional filing disclosure supports the claims. What about Meninas? Meninas. Would you like me to shift to Meninas, Your Honor? Yes. So Meninas, we've also challenged the prior art status of, and we challenged the prior art status of Meninas based on the absence of direct evidence. A line only submitted inferential evidence, excuse me, in Meninas. A line submitted evidence about policies, a line submitted evidence about what could have happened, a line submitted evidence about what generally happens, but a line did not submit any evidence about what actually happened. I mean, why is that evidence not sufficient? Right, this is about, is this Internet Archive, is that the? Yes, it's Internet Archive. About what the normal publication practice is upon receipt, and the normal practice was it's published within a couple of days or something. In the absence of something to the contrary, why can't the board credit that? Well, because we think that there should have been evidence that was connected directly to what happened with this very article. A line made no effort to, as far as we can tell from the record. Do you think there are people around who wouldn't know that? The authors might, the authors could. There was no effort to contact the authors, for example. Obtained declarations from the authors, obtained declarations from Internet Archive about things that were more than just generalized policies. So yes, we think that there could have and should have been more. Wasn't there some evidence that was more than just generalized policies? Well, there was evidence that showed links for downloading, supposed links for downloading, but those didn't establish that the downloading actually took place. They just established that somebody put a link on a website, but there was no evidence that that. I'm sorry, why do you, if something's available in the library, that's enough, even if nobody checks it out. But if something's available in the library, your honor, we know that it's able to be checked out. We don't think that this simple link was sufficient evidence that it could have been actually downloaded. On the carrier thing, the kind of legal issue. I guess, just tell me if I'm understanding the terms of the debate. Everybody agrees, and I think the board agreed, that the provisional as a whole has to supply support, you know, written description 112A way for what? Well, the board determined, the board followed Penumbra. The board followed the board's preference. Penumbra doesn't help me at all. Okay, we agree. It provides no analysis independent of, look, we said this before in the NPEP and some internal memorandum, which are not self-explanatory. So I'm trying to get very precise about what's in dispute. I thought it was that Drinkware says, following Wertheim, that this secret piece, the secret document, the original provisional filing, had to be such that it being a patent application, it had to be issuable if the patent office acted with superhuman speed and issued it that day. Now, a provisional can't be issued by itself because it has no claim. So you look to the first document, namely the non-provisional, that has claims in it and ask if the provisional provided written description support for a claim in the first document. That's in essence correct, although Wertheim was not a provisional application. It couldn't have been. It was before provisions existed, right? Yes. So what happened in Wertheim is that there was a string of CIPs, string of CIPs, continuations in part, some of which added new matter. And the question there was, what needs to happen in order for the issued patent, one of the later patents, to enjoy the benefit of the priority date of the earliest? Wertheim said that the earlier application, the one whose priority is being asserted, had to support a claim, a particular claim, just one claim, because if you have one claim, then the whole document could have been released if the patent office got it at 9 in the morning and issued it at 5 o'clock in the afternoon. That's correct, Your Honor, of the issued patent. And that's what Penumbra and, in this case, the board said, we don't need to do. Correct. So dynamic drinkware. And that's the dispute? That is the dispute. Do we look at a claim in the first non-provisional or a claim in this patent or those two things? Well, here we would need to look at a claim in the published application, which is what Carrier is, and compare that to the disclosure in the provisional application. And that's what the board said. They just didn't need to. Correct. That's correct. And is your argument that there's language in the new statute, in the AIA statute, that makes that wrong or that simply isn't sufficient language? Now I'm thinking about the analogy to the Helsin case. There isn't sufficient language to have upset a 100-year-old, or I guess at the time of the AIA, anyway, very old principle from the Milburn case in the Supreme Court, that the reason that secret art can count if the secret art is an application is only if that art is such that it could have been published by a super speedy PTO. Our argument is the first one, Your Honor. Our argument is that section 102D is expressed that the application or the patent needs to be entitled to make a claim of priority. Entitled under section 119. Entitled under section 119. In other words, it's not ministerial. It's not ministerial. It is not ministerial. It's a substantive requirement. And we argue, Your Honor, that that language in 102D is even clearer than the language in 102E, which was the statute that Wertheim was analyzing. 102E required to be able to enjoy the priority, prior art patent, enjoy the priority of an earlier filing. The application, it referred to an application that another filed in the U.S. before the invention by applicant for patent. 102D never included that language entitled. Wertheim said, Wertheim came, I'm sorry, Dynamic Drinkware came and said, under 102E, to enjoy the benefit, you need to be entitled to make that priority claim. That's what Drinkware said. Drinkwater doesn't help you that much because that wasn't an AIA case. But I gather your argument is that the board here erred in relying on penumbra, which said it's merely a ministerial requirement. Correct. Ultimately, Your Honor, it's the statute that helps us. Ultimately, our case is based on the statute. The statute has that language entitled to claim priority. And entitled to claim priority can only mean one thing. It can only mean that you meet the statutory requirement. Let me ask you one question. Align urges that if we would agree with you that the board erred by failing to do the proper analysis, that the case should be remanded. What would be the nature of any, do you agree with that? I think that that is a path, Your Honor. We think that an outright reversal here is the more proper path. And really, that goes to the way this issue, in our view, was presented by Align in the preceding. Align originally, when Align filed its petition, it provided a supposed claim chart showing support. It said under Dynamic Drinkware, here's our support. And it, in essence, was agreeing that Dynamic Drinkware applied. We, Dental Monitoring, in our patent owner statement, challenged the substance of that support chart. And then, in response, Align changed courses and said, oh no, Dynamic Drinkware doesn't apply. Penumbra applies. We don't have to show support. So we think that under those circumstances, we think that there shouldn't be a second bite at the apple here. And that reversal is the proper path. I do acknowledge, though, that remand is a potential path for this court to follow. But there's a factual question remaining if we reverse because of Penumbra. And that's for the board to redo. Again, we acknowledge that that could be a path. Given the way Align handled this issue, we don't think it should be given that second bite. And does that factual issue at least focus on, if not turn on, whether in the provisional, the user of the method can be the patient? That's my recollection. That's the primary issue that that turns on. There might be others as well. Okay. It turns on whether Cary is provisional, supports it's non-provisional. Correct. At a higher level, that's absolutely correct, Your Honor. I think Judge Tonto was just getting a little more specific. But that's absolutely correct. That would be the question if there were to be a remand. Okay. If there are no more questions, maybe then I'll go to arguments on the inappropriate combination of the three references. You can do that. Salah? You're about to be heading into your rebuttal time, but it's your choice. Oh, I didn't get a yellow light. Very briefly then, the combination was inappropriate for a number of reasons, primarily because of the expressed teachings away in these references. Salah references, which was used for cell phone acquisition of images, was all about simple acquisition of images. Acquisition with limited precision. Is that a teaching away or a statement that it was simply not preferred? Well, Your Honor, it's a good question. It said not preferred, but it also said that being able to capture images with limited precision is a considerable advantage. And so when we believe that when the reference is read as a whole, we see a clear teaching away. No more questions, Your Honor? I'll reserve my rebuttal time. We will save it for you. Mr. Feller. Good morning, Your Honors. May it please the Court. Section 102D did change the law. It added language that was never in Title 35 before. For the first time in the AIA, we had in Section 102D a statutory provision that told us when a priority document became effective as prior art. Not when that document became effective to support the inventor's claim to an earlier filing date, but when that earlier application became available as a prior art document in the sense that its filing date could be used as the filing date of the later published application or U.S. patent. And it's important that Congress focused on something less than the full requirements of 119. And that's because what happens when somebody claims priority to a provisional application? Provisional applications are kept confidential. The public never sees them. But as soon as someone makes a claim to the provisional, whether or not they're entitled to it because it provides 112 support, but as soon as they make a claim to it and that claim appears on the face of their actual application or the U.S. patent, that unlocks the provisional. The provisional that is... Something? Yes, the provisional becomes publicly... Not just that its content would effectively be public by being translated into the non-provisional application. No, Your Honor. The public has access to the provisional application by virtue of the fact that they claimed priority to it. And that's handled in the rules of the USPTO. It's 37 CFR 1.14. So that's why Congress focused on that. Now, dynamic drinkware, Your Honor, dealt with common law principles, common law principles of delay, common law principles of the PTO working as quickly as theoretically possible, even though that would effectively be impossible. But once we had 102D, Congress said, let's break apart these two doctrinal problems. Let's break apart the problem of knowing when a claim is entitled to an earlier priority date versus when an earlier priority date can be used as the effective prior date for the later filed and published application. I mean, broken it apart, which is indisputable, the part that you want to concentrate on is the 102D2, right? And what is it about that language that displaces the Milburn principle, which then got picked up eventually through Wertheim and into dynamic drinkware, which is obviously post-AI? There are a few things, Judge Toronto. The first is that 102D no longer focuses on a claimed invention. So 119E talks about the invention and needing disclosure of the invention in compliance with 112. That language isn't in 102D. 102D talks about whether or not the application is entitled to claim the benefit. Now, that's kind of a non sequitur when it comes to 112, because when we're just looking at an application, we have no claim with which to assess 112 support. So we're only talking about whether or not the application can claim the benefit. So that's— 102D begins, for purposes of determining whether a patent or application is prior art, that's what the section is about. And it shall be considered to have been effectively filed if it is entitled to a claim under 119. And so that's a prior art provision. And that indicates that Penumbra was wrong when it says it is merely a ministerial requirement. It's a substantive requirement. Harrier's provisional has to support its non-provisional for this provisional to be prior art, isn't that right? No, Your Honor, because there's no claim in the non-provisional for you to make that judgment. Because 102D doesn't refer to the claim. 102D, if I can point, Your Honor, to it, refers to the subject matter described. So what 102D shows us, like the very last line of 102D before we get to paragraph one, it talks about with respect to any subject matter described in the patent application. So we're now not focused on the invention, which is the language of 119. No, we're focused on the specification. We're focused on whatever subject matter, Your Honor, in the specification we're thinking about. And that's the subject matter that's being used as allegedly prior art, okay? And so it tells us to focus on the subject matter. And then when we get down to 102D2, it circles back to that. And the very last few words of section 102D2 talks about the earliest such application that describes the subject matter. Have you made the argument or does Penumbra say that this provision doesn't apply to it? Provisional application at all? I don't remember seeing that. I'm not sure I understand. A provisional application doesn't have claims. Oh, correct, Your Honor. And you haven't made the argument that 102D, when it says, for purposes of determining whether a patent or application for patent is prior art, that that does not include provisional applications. You have not made that argument. No, because a provisional application isn't going to be the prior art reference. The prior art reference here is either going to be the published non-provisional application or the issued U.S. patent. We're not making the allegation that the provisional is the prior art. We have the carrier non-provisional. And the question is, what is its effective filing date? Your Honor, the question is whether or not it was entitled to claim the benefit of an earlier application. And when we're doing that analysis, we're thinking about whether or not one applicant can simply claim the benefit of an earlier application. And the reason the language— Then we'd have to look at this non-provisional carrier and ask whether under Section 119, which includes, you know, non—includes provisionals as something that you can invoke, whether there would be written description support in the provisional for this non-provisional application, which means for its claims, at least one claim. Why is that not pretty straightforward? Because, Your Honor, 102d is focused on the subject matter that's being relied upon. Nowhere in 102d did Congress refer to the invention as it refers to in 119, nor does it refer to a claim. It's only asking about that first step in the test. That is, you rely on subject matter from your published application or a patent, and now you want to make the point that you're actually going to get that earlier filing date as the prior art date. So what you have to do is you have to find that that earlier application, which was claimed as a priority document, in fact has that same description. That is, the subject matter relied on circles back to the first application. You don't need to do the next step. The next step being, okay, let's do this sort of superfluous step that has really nothing to do with the prior art analysis. Let's just see if they claim something that happens to have support in the original. We had to do that pre-AIA. We had to do that in dynamic drinkware. The reason we had to do it is all we had was the common law. All we had was this concept of PTO delay. But the concept of PTO delay is irrelevant here because we actually have a statutory command that says, okay, you've got subject matter to rely on. Now look at the earlier application for which it could claim priority. Not that any of its claims are actually entitled to priority. Congress changed the language. They put in entitled to claim. They didn't have to put entitled to claim if they really meant entitled to priority. And the reason why they put in entitled to claim is because we're talking about an application to application comparison. Entitlement to claim means disclosure. And that's the same as entitlement to priority. Your Honor, we would disagree with that based on the structure of 119E1. I'm sorry, 119E1. The way 119E is written is it talks about an application for an invention that's described in the way required by 112. So now we're talking about a claim because we're talking about an invention. And then it goes on and it says you can, you know, you can refer back and then it gives us these requirements. The application has a common inventor, it's co-pending, and it has a reference to the earlier application. So when someone files a patent application with the USPTO and they want to claim a provisional, that's the only thing anybody knows at that point. Is it co-pending? Is there a common inventor? And did you refer to it? No one can actually know whether or not that's going to pop out the door later with a claim that's actually going to get entitled to that earlier priority date until they can do the 112 analysis on a particular claim. And that analysis is irrelevant for 102D, the new 102D, because it never mentions a claim and it never mentions an invention. It talks about whether or not an application can claim the benefit. So it's a non sequitur to try and now inject a 112 analysis because a 112 analysis is claim specific. And 102D doesn't refer to it a claim and it doesn't refer to an invention. And that's why Congress did that. And it's also sensible, Your Honors. It's entirely sensible because we're living in a first to file regime. And if somebody filed a description of something and there's no doubt that they filed it and then they later had an application published, that earlier filing is what should block later filers. Whether later filers are blocked shouldn't depend on what claim happens to pop out at the end of the prosecution of the non-provisional application. Are you saying that Penumbra was correct? Your Honor, I'm saying yes. It may not have had a rigorous analysis. It may not. But there was a rigorous analysis behind the scenes. It was definitely correct in what it focused on. And it focused on new language in 102D that was never there before. Ministerial as opposed to substantive? Ministerial, yes, as opposed to the actual 112 requirements, which are claim-specific and not relevant to whether or not an application can make a claim to priority to a previous application, not whether any of its claims are actually ultimately entitled to that. That's why Congress didn't mention a claim. That's why Congress didn't mention the invention in 102D because it wanted to create this brand new idea about whether or not we're going to give the prior art date to the original filing. Mr. Kelly, Mr. Sandinato said that a line sort of switched gears before the board on this question of the application of dynamic drinkware and stuff. And he posited that there really doesn't need to be proceedings on remand if we disagree with you on the carrier point initially. What's your response on that? He's wrong. We didn't switch gears. We did sort of what was very easy, which was to show that, in fact, there is support in the provisional for the later filed claims. The only issue is whether the user can be a patient. The provisional has the exact same language as the later filed application. It says it's a user's phone and that the user's phone can have on it the user's teeth. So it used user in connection with the phone and with the teeth. That's enough. That's the point we made. There's a claim chart in our petition. Doesn't that suggest that maybe you might have an easy time of it on remand? We should have an easy time of it on remand. And I could even make the argument that it doesn't even need to go back because it's so clear. But it is a question of fact and the board never reached it. But he's wrong that it can just stay here because that at least has to be decided in the first instance. It's not a very heavy lift for us because it's in there to begin with. It's also unnecessary. And the fact that we said that it's in there and then we also said it's unnecessary, that's not changing gears. It's just covering our bases and both of them are pretty solid. The next thing I'll respond to if there isn't any more questions on that is Meninas. There is plenty of substantial evidence to support the board's findings here. The front page of Meninas has the date it was submitted. No one disputes that. That's at 2271. Dr. Frusch's personal knowledge about how he obtained it and what happened with his own papers. That's at page 977. Dr. Frusch's evidence about the metadata. That's at pages 979 to 980. The policies of archive.org. Describe briefly the metadata evidence, what that was. Sure. So Dr. Frusch said, okay, I actually looked at the metadata of this document to show when the actual document was actually produced. And it was, I think, a day or two after the submission date, which was consistent with archive.org's policies of publishing very quickly. And then the last thing I'll point to is the declaration of Mr. Frank White, which is at 2762. He explained how his platform worked, and he showed that the document with the URL was, in fact, obtainable before their priority date. I think it was July 8th. So all of that is more than substantial evidence. The last thing I'll mention, which is the only other thing my friend on the other side mentioned, was that Salah said that deep learning can also be used, and somehow that's a teaching away. Oh, I'm sorry. Actually, Salah says it can be used. It also says it wasn't preferred. The fact that it says it's not preferred, that, of course, is not a teaching away. It's not actually an argument they made, but it doesn't really matter because what we said it was that it was affirmative evidence of a motivation, or it agreed with us. That's a question of fact, and that substantial evidence supports that, and the evidence is the phrase that deep learning can also be used. That's enough to support the board's finding. Unless there's more questions. Thank you, Mr. Kelly. Senator Notto has two minutes plus. Thank you, Your Honor. Just briefly on the priority issue, I'm coming back to the words of the statute. The statute says entitled to claim priority. It doesn't say makes a claim. It doesn't say asserts a claim. Congress critters said that. They didn't. They said entitled to claim right of priority, and we view that as dispositive. Going to the teaching away, I just want to be clear. There's a number of teachings away in SALA, and they're based on various teachings, and, quite frankly, they address various issues. One of our teaching away arguments has to do with SALA. It has nothing to do with deep learning at all. It has to do with SALA being a user guide system for an ordinary user to take pictures in a very simple, very accessible way with limited precision. SALA calls the ability to do that a considerable advantage, and in order to achieve that, SALA uses just markers on a retractor, on a physical retractor to help guide the user. Carrier is a very different kind of reference. Carrier is a reference that teaches image capture for trained dental professionals, dentists, or trained, in essence, nurses or technicians, and it uses a much more sophisticated approach. It uses an approach that does contour matching. That contour matching approach requires teeth measurements. SALA expressly says, preferably, no measurements of teeth are to be taken. So that's one of our teaching away arguments. Our second teaching away argument, or another one of our teaching away arguments, is based on deep learning, and that's based on SALA's lack of a preference for deep learning. First of all, SALA does not teach deep learning in the context of image acquisition. SALA only teaches, or references deep learning, I should say, in the context of doing post-image analysis of an image. It lists 18 preferred ways of doing it, none of which are deep learning, all of which I would characterize as image processing. It lists another 18 ways that it says are not preferred, and one of those is deep learning. And so we think that that is a clear teaching away, and we did make that argument. We made that argument in our gray brief. No further questions? I think that that's all that I have. Thank you, counsel.